Good morning, Your Honors. Eric Slepian on behalf of Adrian Burrell. I'm going to attempt to reserve three minutes for rebuttal. As you are aware, this is a claim for Social Security disability benefits filed by Adrian Burrell. An administrative law judge denied the claim, and that's the decision that's currently subject to review. First, I'd like to address the ALJ's handling of the treating physician opinion, and that's from Dr. Riley. Dr. Riley treated the claimant since 1997. Dr. Riley noted that the claimant was suffering from headaches, neck pain, back pain, and the ALJ attempted to give a number of reasons for discounting this opinion. First, I'd like to point out that the opinion of Dr. Burrell really is not in conflict with any other evidence, and that would change the standard that the ALJ must meet in determining the way to afford the opinion. We do recognize that Social Security physicians have assessed differing residual functional capacities, but that's not a conflict with the opinion of Dr. Riley. Dr. Riley focused on Ms. Burrell's headaches and the effect of the pain that it would have on the ability to sustain an 8-hour workday. So what the administration did is they sent Ms. Burrell to Dr. Cunningham, and Dr. Cunningham, right off the bat, says he believes he's being misled because Ms. Burrell indicated that she had an astrocytoma, which I could understand the doctor being a little skeptical about, because that's a very rare type of tumor. Usually it's cancerous, and usually it results in a life expectancy of somewhere around six years. But the MRI said that she may have an astrocytoma. She truthfully reported to Dr. Cunningham. The problem with Dr. Cunningham's report is he reviewed zero records. A lady came into his office with a tumor that had edema that was inoperable, and he just, pardon the language, he just blew her off. And then what the administration did is they give that reasonable. So what else do they do? They send the claimant for another evaluation. They don't give the evaluator any records. There are two treatment notes, an X-ray, not the MRI that they had, and the synopsis of the report of Dr. Cunningham. I don't know how they can logically rely on an opinion of a physician who spends 20 minutes with a claimant, disbelieves it because the impairment is so severe that it's improbable, and then writes a report basically blowing off this claimant. If we look, the problem with this counsel is that the ALJ found your client not credible or not. And for that, the ALJ has relied on a couple of things. And we can start with Dr. Riley, because he cites Dr. Riley's testimony that he didn't think it was clear that she didn't like work, and he wasn't sure whether there was a problem with secondary gain. So that looks like the ALJ took that as evidence that she was malingering. She didn't like her work. She wanted out of it, and she didn't care whether they fired her or not, because she didn't want to be working there. And then we've got a couple of other things, including an inconsistency between her testimony at the hearing and what she had told her therapist just a couple of months before about her ability to do common household chores, namely vacuuming. And the third thing was that she said that she couldn't do common things such as crocheting and knitting, and yet there's quite a bit of and crochet, and that she could play Moonlight Sonata. So what do we do with that? All right. So let's address those individually. First, Dr. Riley had indicated in his report prior to the date of disability that he thought perhaps there might be an issue of secondary gain. If we look, at that point in time, she's working, she's in pain, she's missing time from work. I think she missed 40 days of work during that one year. Of course she's going to be unhappy at work. And then – Well, that may be, but it doesn't – it doesn't – it doesn't tell us that she's not malingering. Except after that date, she goes to her doctor and says, I need you to release me back to work. And she goes back to work. This is not someone who is malingering. And in fact, the administrative law judge referenced that one question by the doctor, and it's a – it's a comment that was never ruled in, and the administrative law judge never found malingering. I understand Judge Bolton did at the district court level, but that is not what's under review. It's the decision of the ALJ that's under review. He did not find malingering. Ms. Burrell has an excellent work record. She was unhappy because she had a tumor that was getting larger, that was causing her headaches and pain. She was missing time from work, and I am sure she was getting pressure from her supervisors that she was not able to complete her task timely because she was absent so frequently. The next question – I'm not sure of the order you brought it up, but I am aware that you had an issue as to what the record reflects concerning vacuuming. The administrative – the physical therapy records do indicate that she does some household chores. Vacuum is listed as one of those chores. At hearing, Ms. Burrell does not say, I don't vacuum. She does not say, I can't vacuum. What she actually says is, vacuuming and I do not get along. I'm sure they don't. She – at that point in time, she had had a seizure. She went to the hospital. They looked at her previously classified tumor and said, we have no choice now. We are going to remove it. And she had emergent surgery. After that surgery, she had difficulty with her grip on her left side. She continued with headaches, and the cervical MRI shows an ongoing defect in the cervical region. I have no doubt she does not get along well with vacuuming. Now, the one thing that most concerned me in terms of daily activities had to do with the making of lace and the knitting and so forth, which, you know, may not on its own be important except for the fact that there seems to be a conflict in the testimony. She reported to her doctors that she regularly did knitting, crocheting, sewing, making lace, that those were her hobbies, and she was able to do them. But she testified that she has tried to do those things and is not able to do them. And that seems to be a pretty direct conflict. What do we make of that? So Ms. Burrell used to do a lot of knitting and sewing. She developed these significant problems. If you look at the physical therapy records, it says she's having trouble knitting and sewing. She can do 30 minutes at a time, twice a day. We get to a point and she says, I can't knit, or I can't sew, or I don't do that anymore. There is such a difference between an individual who would normally knit and sew hours on end and then be in so much pain that she can't do it for more than 30 minutes. And the natural reaction is to say, I can't do that. If I was an avid chef and I couldn't cook for more than 15 minutes, and now it's light meals and it's not nearly what I used to do, and you ask me, I would say, I can't cook. That's what she did. She can't. She is not anywhere near the level. If you look at those physical therapy records, they say she's having trouble doing it a half hour at a time, twice a day, for someone that this was a very significant hobby. You have to look at the manner in which the words are uttered. You can't just isolate this. When she doesn't get along with vacuuming, it doesn't mean she can't vacuum, and the same thing applies to the knitting. The difficulty is that we do have to listen to the words, but unfortunately we're not going to listen to them. We don't see her. We didn't get to  So what we've gone on to do is to see whether there's substantial evidence in the record to support the ALJ's own determination about her credibility. That's very difficult for us to do on a cold record. But here's a key, and that key is Ms. Burrell never, ever stated she was disabled because of the hand problems. This all comes down to her neck. And her headaches. It's irrelevant. This was just a nonissue. And if you look at that transcript, the administrative law judge asked he called the vocational expert in to find out what kind of jobs would be available. He asked this vocational consultant one question, and the response was she couldn't work. And he said, that's it, I'm done. And I followed up and said, well, just to make sure, if we assume what Dr. Burrell says, could she work, vocational expert says no. If we assume what Ms. Burrell says, vocational expert says no. We're walking out of this hearing assuming the judge is considering the headaches and realizes that my client's unable to sustain work. Then he comes out with a medium residual functional capacity. Let's talk about that. That means that you could lift 50 pounds, two thirds of a foot, and still be able to work. Two thirds of the day. 50 pounds. No sit-stand option that was included in the ALJ's question to the vocational expert. No indication as to headaches. And again, the ALJ says Ms. Burrell has severe headaches. What's his assessment? There is not a single limitation for her headaches. This case was reliant on headaches. And let's look how the judge handled the other evidence. The judge says, whoa, it can't be as severe as alleged. There are gaps in treatment. Well, there weren't gaps in treatment. They admit now there weren't gaps in treatment. I mean, if you think she's not going to doctors for her headaches, maybe there's some rationale there. But if she's going to the doctor for headaches, it doesn't make sense. So, and again, if you look, she isn't somebody that just sat back. She had injections. She had an evaluation for a spinal cord stimulator. She's maintained on narcotic pain medications. And she had emergent surgery for a tumor previously classified as inoperable because the doctors were concerned if they went after it, she would come out in a very impaired or conditioned or deceased. So this is not. And then the judge says, which is mind-boggling to me, sorry, there's a lack of objective data. There are MRIs showing a tumor from C2 to C5 with edema and a required surgery. And he just said, ah, there's a lack of objective data to substantiate the claimant's complaints and to substantiate the opinion of Dr. Riley. I see I have two minutes left. I'm going to reserve. Thank you. Good morning. May it please the Court. My name is Sarah Van Arsdale-Berry, and I'm appearing here on behalf of the Commissioner of Social Security. I'm here to report that Barrell was not disabled because the evidence simply does not support her claim. Barrell has not met her burden on appeal of showing how the evidence, in the medical evidence in particular, proves that she is in fact disabled. Rather, the ALJ reasonably found that Barrell was not disabled under the strict definition of the Social Security Act. Barrell had some neck pain. She had some ongoing neck problems. But it was treated conservatively in her neck. Barrell did report having headaches. She did so only sporadically. She received treatment only sporadically. And several of her physicians noted that the headaches were tied to her neck problems and appeared to be secondary to her neck problems as opposed to an independent medical condition. Again, neck problems improved and were treated generally conservatively. While Barrell reported some hand problems, as counsels noted, that's not the main issue at the case here. This is not a case where the claimant had significant hand problems. And while she did report having some difficulties, most specifically in the 2009 timeframe after she had her neck surgery, she then reported recovery to a physician after undergoing this treatment. Further, the ALJ's decision was not, as counsel implies, disconnected from the evidence, disconnected from all medical source statements. Rather, it was consistent with two consulting physicians who conducted independent examinations of Barrell, and it was consistent with the State agency physician who later reviewed her records and who later ---- A lot of the case depends on her credibility, because she's reporting significant limitations that the ALJ does not find to be accurate in the ALJ's view. And my biggest concern, which the district court also noted, is that there's this kind of boilerplate, I don't believe this person, but the paragraph where that appears doesn't itself contain reasons. I mean, you can look throughout and kind of more or less infer some of these reasons. But I found that somewhat disturbing, and I thought that the vacuuming example, the way that the ALJ used it later in the opinion is not fully accurate. So what do we do with that, where the ALJ basically says, I don't believe this person, but doesn't then say, because of A and B and C and D, and you can kind of wander through and find those things. What does the ALJ say that in your view is an accurate reason to disbelieve her testimony about the extent of her credibility? Several things to that point, Your Honor. While the ALJ does have a paragraph in his decision, as you described, where he recites the overall standard of how credibility is to evaluate ---- to be evaluated, I think the only fair reading of the ALJ's decision is to read it in its entirety and not read that particular paragraph in isolation. Okay. Point me to specific places in the ALJ's decision that give concrete evidence that the claimant's testimony is inaccurate. I know on excerpt page 50, there's the unable to use a vacuum, which isn't exactly what she said. I find that reason to be inaccurate. Is there anything else that you would point to that is specific to the claimant's testimony? Anything specific as a reason for disbelieving her? A number of things, Your Honor. If you continue reading the ALJ's decision, and you continue on past that paragraph, I think a reasonable reading of what the ALJ did is that everything in the decision points against what Burrell's claiming. So, for example, in the next ---- But see, our cases require more than that, it seems to me. If the ALJ said nothing about her credibility and just described these things, that's one thing. But our cases do seem to require that if an ALJ decides not to believe the person's testimony fully, to not credit it, that specific, cogent, accurate reasons have to be given, in addition to the sort of belief that the ALJ did not find that there's a mild limitation on social functioning because she can telephone her friends and her family. And that isn't really a reason not to believe her, unless the ALJ ties it together. I agree that specific and cogent reasons need to be given, and I agree that that standard needs to be met, and that standard was met here. If you read the remainder of the decision, which, again, I don't think ---- Tell us specifically what else there's a conflict in. I cited to opposing counsel the knitting incident, but the ALJ didn't rely on that. He didn't say anything about it. So we found that, and I think that was in your brief, but the ALJ didn't mention it. He recites objective medical evidence. He's reciting CTs, MRIs, X-rays. Right, but what makes her incredible? She didn't even author those things. I think ---- Are you saying that because she told the physical therapist that she couldn't vacuum, and then she came out six months later and on the stand said, vacuuming and I don't get along, that we're supposed to disbelieve everything that she told her medical providers? No. No, Your Honor. That is not what I'm saying. What I'm saying is that at the end of the day, what the ALJ is charged with in evaluating a claimant's credibility is that he has to look at the evidence as a whole. He has to look at the entire  Right. So we're still trying to find out whether the government relies on the fact that the ALJ found her not credible, or is that not important? Do we sustain this without the credibility finding? Well, I think we can ---- I think that the ALJ legitimately found her less than fully credible. Do we need that in order to sustain the ALJ's decision? I don't know that you have to have it to sustain the ALJ's decision. But it goes to what? What's it useful to? Well, I think it ---- Your Honor, if your question is, to what extent is the ALJ's finding that she's less than fully credible useful, I think it is useful in the sense that it is further support for his ultimate finding that she's not, in fact, disabled. So I agree, specific ---- Because she's ---- because she doesn't suffer the pains that she tells people she suffers? That's part of it, yes. Well, so it ---- her credibility is the domino that makes everything else fall. Because if her testimony is 100 percent credible, the limitations to which she testified are inconsistent with the ALJ's ultimate finding. So I don't understand how you can say that even if she were credible, we could affirm. I don't follow that. Your Honor, to get back to the previous question, what I was trying to articulate is that the ALJ's credibility finding is important to the overall analysis, which his finding here is that she's less than fully credible. I don't disagree that this is a case that if you're looking for disability, it's largely going to be driven by her claims. As a practical matter, that's largely all the evidence that there is in the case, to get back to a larger point of if you're looking at the treatment records, if you're looking at the objective medical evidence, if you're looking at the consulting examiner's opinions, if you're looking at the state agency physicians who reviewed her medical, if you're looking at the other evidence of the record, frankly, there's not a lot there. There's not a lot there other than Dr. Riley's opinions and her claims that her headaches, which are described varying from migraines to headaches that the physicians described as being more connected with her neck pain and her neck problems, so there's some divergence there, that that's largely what we're looking at. I agree with that, Your Honor. I agree. I think in this particular case, there's scant evidence other than Burrell's description of her headaches being migraines. Are you saying that that's what the doctors are accepting when they say she has all these limitations? Are you referring to Dr. Riley's opinion specifically? Yes, that is at least partly what his opinion is being driven by, yes. Yes, it's her self-described headaches. So it does all depend on her credibility. Well, yes, I think his opinion, to a large extent, does depend on it, but I don't think that the overall decision depends on her credibility, again, because that's largely where the disability claim is coming from. But that said, I don't think that that's the only thing that should be looked at here. That's what, getting back to what I was attempting to describe before, which is the rest of the evidence in the case, which is at a disconnect with what she's describing. Let me pose a different question to you. I want you to assume, for the purpose of this question, that we were to conclude that the ALJ's finding of adverse credibility finding is not supported in the way that it has to be. And I know you don't agree with that, but I want you to assume that. What should we do? What is the appropriate tagline if we were to go in that direction? If, for the purposes of this question, that that were to be found, then I think that the only appropriate remedy here is to remand the case for further proceedings, because at the end of the day, what we would be left with is Burrell's claims, on the one hand, and the majority of the evidence in the case, on the other hand, in which case I think the only reasonable course of action would be to send the case back to the agency. For what kind of further proceedings? Well, if what would have to happen is that this Court would be finding there was an error, if I understood the question, there was an error with respect to credibility, then the ALJ would need to revisit that credibility issue, but he can't do it in isolation. And if he were to do that, he would have to consider it and weigh it against all the rest of the evidence in the case, if this Court were to find, which I disagree with, that that was somehow improperly done in the first instance. Okay. What is the evidence that you say is at a disconnect with her testimony? It's quite a bit of evidence. It's her treatment records, number one. She largely sought treatment from Dr. Riley, but if you look at his records, I think they are fairly characterized as sporadic treatment, treatment only every so many months, generally conservative. There's at least some evidence that her headaches were somewhat well-controlled with medication. There is the additional of the objective medical evidence, which I think, for the most part, fairly shows mild to moderate findings with regard to her neck pain, so that that's an additional thing to consider. But beyond that, I think the fact that she had varying reports about what she was able to do and what she was not able to do. No. All of that really goes to sort of a, to, it doesn't say that she's not disabled because she's provided sort of the components of all of that. That really goes to whether she should, to whether we, the doctor should have believed her when she came in and said I've had headaches. And there's no, there's, I don't think you can get that credibility finding out of this unless you're going to extrapolate from the statement that she said about vacuuming, because that's the only thing the ALJ points out in the opinion. The ALJ ultimately concludes that he doesn't, that he doesn't think that she's, that she's disabled. Now, we can go one of two ways on that. Either we can, either we can discount all the things that she said, or we can say conceding all the things she said it doesn't amount as a matter of law to a disability. Which way does the IJ, the ALJ go here? Your Honor, I think that the ALJ says I don't believe all the things that you told the doctors, but from which they concluded that you're disabled. Or did the ALJ say, even accepting everything that you've said here, I don't believe all the things that you've told the doctors, it doesn't, as a matter of law, it doesn't satisfy the criteria for disability? I think it is the latter. It's that if you see that in the ALJ's opinion, saying that even if she's credible, she loses. Let's say the argument is over whether somebody has a sore big toe, and the ALJ says, I don't believe you, but it doesn't matter, because even assuming you have a sore big toe, you're not disabled, because you can do a lot of other things. I guess I'm surprised by your answer to Judge Bybee's question. Your Honor, I see that my time has run over. May I explain? I think, to be clear, that that's somewhat of a difficult task in this case, because the decision does both. I mean, on the one hand, he's finding her less than fully credible, which, as we've discussed, is largely driving the disability claim in the first instance, but independent of that, he does spend a fair amount of time going through the other evidence that I've described, the treatment records, the objective medical evidence, her reports of what she's able to do as part of his decision and as part of what he ultimately found. But he never really gets around to saying, because she was disingenuous about her capacity to vacuum, she was disingenuous in everything else that she ever did in this case, whether she was talking to the doctors or whether she was talking here in the hearing. He never explicitly makes that linkage, and it leaves us wondering what the ALJ really thought. I mean, it's very difficult for us to figure out from this opinion precisely what the path that the ALJ was thinking. Your Honor, I agree that that particular sentence you've described is not found in the decision. However, I do think that if you read the decision as a whole, you can reasonably follow what the ALJ is doing. And additionally, I would note that at the end of the day, however you're looking at the credibility issue and however you're looking at the rest of the evidence in the case, Burrell still needs to prove that she's disabled, and I don't think she can get there from here given this particular case. So while the ALJ might have been able to – might have articulated better what he did, I don't know that with regard to the ultimate finding that we get there. Thank you, counsel. Thank you. Mr. Slepin, you have a short amount of rebuttal time remaining, if you wish. Your Honor, I just want to point out that the subjective judgments of a treating physician also is entitled to a significant amount of weight, which would dovetail with the credibility issue that we brought up, and that's stated in Lester v. Chater as well as Oren v. Ashtew. I would also point out that if we accept Ms. Burrell's testimony as true, the vocational expert stated that the individual would be unable to sustain work. So a remand for a computation of benefits is appropriate in this case. I don't need to use any of my time unless you have any specific questions. I don't believe that we do. Thank you, counsel. The case just argued is submitted, and we're very appreciative of the arguments of both counsel.
judges: SCHROEDER, GRABER, BYBEE